## Case No. 5,735.

### The GRAY EAGLE.

[2 Biss. 25; 7 Am. Law Reg. (N. S.) 226; 2 Am. Law Rev. 359.] [1]

Circuit Court, D. Wisconsin. Sept., 1868.[2]

VESSEL HAVING LOST HER SIGNAL LIGHTS—DUTY OF OTHER VESSELS—MUST WATCH LIGHTS.

1. Vessel having lost her signal lights in a storm, and proceeding on her way with the prohibited white light, is not necessarily to be charged with all the damages in case of collision.

[See note at end of case.]

2. The fact that she carried a light prohibited to vessels while sailing does not of itself absolve other vessels from the observance of that degree of caution, care and nautical skill which the exigencies of the case require.

[Distinguished in The Scotia, Case No. 12,513.]
[See note at end of case.]

3. Though a white light usually represents a vessel at anchor, the officers of an approaching vessel have no right to conclude that it always does.

4. It was their duty, from the moment the light was seen, to watch it carefully in order to ascertain from its bearings whether the vessel was in motion; and if, in the exercise of ordinary nautical skill and care, this could have been done, and was omitted, and this omission contributed to the accident, then their vessel must share the loss, although the other vessel was in fault in running with a prohibited light.

[Cited in The Golden Grove, 13 Fed. 695.]

5. A vessel is not under all circumstances required to come to anchor at night when, through misfortune she has lost her signal lights. In running, she is so far protected that every other vessel must be navigated with reasonable care, skill and caution.

This was an appeal from a decree of the district court dismissing a libel filed by John Greening and Charles N. Deott, as owners of the schooner Perseverance, against the schooner Gray Eagle, for damages caused by a collision. [See Case No. 5,734.]

Wm. P. Lynde and Willey & Cary, for libelant.

Emmons and Van Dyke, for respondents, as to absence of lights cited Waring v. Clarke, 5 How. [46 U. S.] 465; The Delaware v. The Osprey [Case No. 3,763]; The Emperor v. The Zephyr, Holt, Rule of Road, 24; The Pyrus v. The Smales, Id. 40; The Louisa v. The City of Paris, Id. 22. What will excuse departure from rule. The Princessan Lovisa v. The Artemas, Holt, Rule of Road, 78; The Newcastle v. Graaf van Rechteren, Id. 247; The Margaret v. The Emma, Id. 252; The Planet v. The Aura, Id. 257; The Concordia, L. R. 1 Adm. & Ecc. 93; The Spring, Id. 99. That the Gray Eagle had used all the diligence required by law or good seamanship, Strout v. Foster, 1 How. [42 U. S.] 89; The Delaware v. The Osprey [supra]; Peck v. Sanderson, 17 How. [58 U. S.] 178; The Columbus [Case No. 3,043]; The Grace

Girdler, 7 Wall. [74 U. S.] 196–203; The Nichols, Id. 656. That the fault did not originate on her part, and that the real responsibility was with the Perseverance. The Genesee Chief, 12 How. [53 U. S.] 443; Ward v. The Fashion [Case No. 17,154]; The Northern Indiana [Id. 10,320]; Union S. S. Co. v. New York & V. S. S. Co., 24 How. [65 U. S.] 307; Ralston v. The State Rights [Case No. 11,540]; Ward v. The M. Dousman [Id. 17,-153]; The Nichols, 7 Wall. [74 U. S.] 656.

DAVIS, Circuit Justice. The schooner Perseverance sailed from Chicago on the 19th of November, 1864, with a cargo of wheat, bound for Ogdensburg. When in Lake Michigan, off the Manitou Islands, during a severe storm, she lost her signal lights, which she was unable to replace after making efforts to do so. Owing to the lateness of the season, the severity of the weather, and the extent of her voyage, being unwilling to incur the delay of lying by at night, she proceeded on her way, showing at night a white light, in order to call the attention of other vessels to her. While running through the Straits of Mackinac, at two o'clock on the morning of the twenty-fourth of November, the schooner Gray Eagle, bound from Buffalo to Milwaukee, collided with her, and destroyed both vessel and cargo.

It is argued, that as the Perseverance was running without the regular lights, and with the prohibited white light, she must be charged with all the damages, although the court should find that the Gray Eagle was also in fault. This position is untenable. It is unquestionably true that the rules of navigation, as prescribed by the act of congress, must be observed, "but in obeying and construing these rules due regard must be had to all dangers of navigation." The fact that the Perseverance had a light prohibited to vessels while sailing, did not of itself absolve the Gray Eagle from the observance of that degree of caution, care and nautical skill which the exigencies of the case required. If a white light usually represented a vessel at anchor, the officers and seamen of the Gray Eagle had no right to conclude that it always did. It was their duty, from the moment the light was seen, to have watched it carefully, in order to ascertain from its bearings whether the vessel was in motion or at anchor. And if, in the exercise of ordinary nautical skill and care, this could have been done, and was omitted, and this omission contributed to the accident, then the Gray Eagle must share the burden of the loss, although the Perseverance was in fault in running with a prohibited light. I cannot say that a vessel is under all circumstances required to come to anchor at night, if through misfortune she has lost her signal lights. There may be a state of case in which herself and cargo would be in more peril by delay at night than by pursuing a continuous voyage. It is true she encounters serious hazard by

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 2 Am. Law Rev. 359, contains only a partial report.]
2 [Reversing Case No. 5,734. Decree of circuit court affirmed in 9 Wall. (76 U. S.) 505.]

running at night, but she is so far protected that every other vessel occupying the same waters must be navigated with reasonable care, skill and caution.

The obligation of the Gray Eagle to use all reasonable precautions to avoid a collision was not varied because the Perseverance was running with a prohibited light. The present case is one of mutual fault, which, in my opinion, requires a division of damages. It is unnecessary to discuss the evidence at length, in order to show carelessness and fault on the part of the Gray Eagle. She is convicted of want of ordinary seamanship in her own statement of the collision.

The answer says, "A white light was seen about a mile distant, which was supposed to be a light on shore or upon a vessel at anchor. The Gray Eagle was then kept away about a point and steadied in her course to give berth to the light. The light was not discovered to be a vessel's light in motion by the commanding officer until the Perseverance got within about three lengths of the vessel." And why was this important discovery not sooner made? The night was not too dark to do it, for the evidence is that the sails of the Perseverance could readily have been seen a quarter of a mile off; and the wheelsman of the Gray Eagle (in not the best portion of the vessel to see the light), nevertheless, saw it twenty minutes before the collision.

If the light was discovered a mile off, is it not apparent that ordinary vigilance would have disclosed to those on board the Gray Eagle that it was on a vessel in motion, long before there was any danger of collision? The vessels could not have kept their respective courses without it being evident to a watchful seaman that the light was in motion. I cannot, for want of time, analyze the evidence, so as to show how the collision could have been avoided, if the light of the Perseverance had been properly watched. It is very clear the persons in charge of the Gray Eagle were so confident that the light was stationary, that they rested in security, and omitted the observations which good and prudent seamanship required to be made, and which, if made, could not have failed to have disclosed to them the character of the light, and enabled them to keep out of the way of the Perseverance. This conduct on the part of the Gray Eagle contributed very materially to the collision, and that vessel should share with the Perseverance the consequence of that disaster. [The clerk of the circuit court is therefore directed to enter an order, reversing the decree of the district court, and referring the case to a commissioner to ascertain the damages.] ³

NOTE. For opinion of the district court in this case, see [Case No. 5,734]. For opinion of the supreme court affirming the decision, see 9

³ [From 7 Am. Law Reg. (N. S.) 226.]

Wall. [76 U. S.] 505. See, also, The Scotia, 14 Wall. [81 U. S.] 170. The supreme court have recently decided, that although a vessel may be sailing at night with other than the prescribed lights, and by thus actually misleading another vessel tend to cause a collision, yet this will not discharge the other vessel, if she by intelligent vigilance would have discovered from other indications that the vessel was not what her lights indicated. The Continental, 14 Wall. [81 U. S.] 345.

[The decree of the circuit court dividing the damages between the two vessels was affirmed, on appeal by the respondents, in the supreme court, in an opinion by Mr. Justice Bradley. 9 Wall. (76 U. S.) 505. The omission on the part of the Perseverance to exhibit a proper light, though a fault which put that vessel prima facie in the wrong, was held not to exempt other vessels from the consequences of negligence on their part. The decision in Chamberlain v. Ward, 21 How. (62 U. S.) 548, arising under a similar act (March 3, 1849; 9 Stat. 380), was followed and approved.]